Filed 6/12/24  P. v. Rivas CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

THE PEOPLE,

      Plaintiff and Respondent,

v.

JULIO CESAR RIVAS,

      Defendant and Appellant.

E080687

(Super.Ct.No. FWV20002875)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Corey G. Lee, Judge.  Affirmed.

Spolin & Dukes, Aaron Spolin, Caitlin Dukes, Jeremy M. Cutcher, and Erica Esquivel for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Paige B. Hazard and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Julio Cesar Rivas was convicted of sexually abusing two girls on multiple occasions and sentenced to 278 years to life.  In this appeal, he argues his due process rights were violated because the amended information was not "sufficiently specific" about when the alleged abuse occurred, and his trial counsel was ineffective for failing to file a motion to challenge the information on that ground.  He also argues the jury instructions did not adequately emphasize that each individual count must be proven beyond a reasonable doubt.  We decline to consider his ineffective assistance claim on direct appeal, and we find no error in the jury instructions.  We therefore affirm the judgment.

FACTS

According to the prosecution, Rivas sexually abused sisters Jane Doe (born Jan. 2008) and Mary Doe (born November 2005) for years.  In May 2015, Rivas and his girlfriend, who is the girls' aunt, moved into the house where the girls lived with their mother and father.  Rivas is not married to the girls' aunt, but the family treated him as if he were.  He is also Mary Doe's godfather.  Before they lived together, the aunt and Rivas lived separately from the girls' family, but the aunt would often babysit Mary Doe. The abuse came to light in September 2019, after Jane Doe told an older cousin about it. After Rivas was arrested, forensic examination discovered on his phone several videos depicting Jane Doe's genitals; the videos had been deleted but were recovered from a cache file.

2

The amended information charged Rivas with 11 counts of lewd acts on a child under the age of 14 (Pen. Code[1], § 288, subd. (a), counts 1-11).  Counts 1 through 8 alleged Jane Doe as the victim of offenses committed between May 1, 2015, and September 2, 2019.  Counts 9 to 11 alleged Mary Doe as the victim of offenses committed between November 22, 2010 and November 21, 2013.  Each of these 11 counts alleged the special circumstances of the victim being a child under the age of 14 and the offenses involving multiple victims under section 667.61, subdivisions (j)(2) and (e).  The information also included a twelfth count, for possession of child pornography (§ 311.11, subd. (a)), committed between July 23, 2019, and August 8, 2019.  For all twelve counts, the information alleged six specific aggravating circumstances, as well as a catch-all for "any other aggravating factors."  (See § 1170, subd. (b)(2).)

Jane and Mary Doe testified at trial, as did Rivas.  The jury found Rivas guilty on all 12 counts, and found true each of the alleged enhancements.  The trial court found true each of the six alleged aggravating factors.  The court sentenced Rivas to 11 consecutive terms of 25 years to life for counts 1 through 11, plus a consecutive three year term for count 12.

## DISCUSSION

A. *Due Process*

Rivas argues that the "long time frames" pleaded in the amended information "deprived [him] of his constitutional right to due process."  The argument is framed as a

---

[1]  Undesignated statutory references are to the Penal Code.

3

claim of ineffective assistance of counsel, as his trial counsel did not demur to the information. (See *People v. Scott* (1994) 9 Cal.4th 331, 354 [generally, "only those claims properly raised and preserved by the parties are reviewable on appeal"]; *People v. Jeff* (1988) 204 Cal.App.3d 309, 342 (*Jeff*) ["Failure of a defendant to demur bars any assertion on appeal of vagueness in the information. (§ 1012.)"].) In Rivas's view, his counsel's failure to demur to the information hampered his ability to defend against the charges by making it impossible to present "an alibi defense" or "full particulars to refute the offenses." We decline to consider the merits of Rivas's arguments in this appeal.

To establish ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) On direct appeal, a conviction will be reversed for ineffective assistance "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Ibid.*)

The record does not establish why Rivas's trial counsel did not demur to the information. Generally, "[s]o long as the evidence presented at the preliminary hearing

4

supports the number of offenses charged against defendant and covers the timeframe(s) charged in the information, a defendant has all the notice the Constitution requires." (*Jeff*, *supra*, 204 Cal.App.3d at p. 342.)  Nevertheless, the defendant "may demur if he or she believes the lack of greater specificity hampers the ability to defend against the charges."  (*Ibid.*)  It is possible that counsel had no tactical purpose in not demurring to the information, for example, if counsel failed to consider the possibility of doing so, or if counsel unreasonably believed that more specificity would not help despite evidence indicating it would help.

But it is also possible counsel had sound reasons not to pursue the issue.  For example, counsel may have reasonably concluded that the long time frames alleged did not hamper any potentially viable defense, or even could work in Rivas's favor one way or another.  In closing arguments, the defense emphasized the long time period during which the offenses were alleged to have occurred.  Indeed, it was the first substantive point counsel made in the defense's closing argument, and counsel returned to the theme several times.  Counsel implied that it is difficult to be certain about "where a person was" in such a long period, that there were few times witnesses saw Rivas alone with Jane Doe given the long period, and that only one photo and video in the long period made it more likely they were taken by Jane Doe in borrowing Rivas's phone.  Counsel also could have thought that more specificity in times would leave less opportunity to argue for concurrent sentences, since conduct at different times is more likely to support a consecutive sentence.  (Cal. Rules of Court, rule 4.425(a)(3).)

5

We therefore decline to decide the merits of Rivas's ineffective assistance claim here. The issue is better considered in a habeas corpus proceeding with a record developed for it.

B. *Jury Instructions*

Rivas contends the jury was inadequately instructed that the prosecution had the burden of proving each individual count beyond a reasonable doubt. He concedes the jury was correctly instructed with a pattern instruction on the beyond a reasonable doubt standard. He emphasizes, however, that the instructions on the elements of the offenses did not reiterate that every element had to be proven beyond a reasonable doubt. He proposes this omission "inevitably confused the jury and likely resulted in the jury misapplying the law." We are not persuaded.

"In reviewing an ambiguous instruction, we inquire whether there is a reasonable likelihood that the jury misunderstood or misapplied the instruction in a manner that violates the Constitution." (*People v. Covarrubias* (2016) 1 Cal.5th 838, 906.) That review is de novo (*People v. Posey* (2004) 32 Cal.4th 193, 218), and "[i]t is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record" (*Estelle v. McGuire* (1991) 502 U.S. 62, 72 (*Estelle*)). We also presume the jury "understands and follows the court's instructions." (*People v. Cortes* (2022) 75 Cal.App.5th 198, 205 (*Cortes*).)

6

Rivas concedes that the pattern reasonable doubt instruction, CALCRIM No. 220, is a correct statement of the law.  After that instruction came other "lengthy" instructions on other matters before the instructions on the elements of each offense.  Those instructions—CALCRIM No. 1110 and 1145—each used the language "the People must prove that...," rather than "the People must prove beyond a reasonable doubt that...."  In contrast, a later instruction on the multiple victims allegation, CALCRIM No. 3181, specified that the People had the "burden of proving this allegation beyond a reasonable doubt."  Rivas proposes the jury was "confused" and therefore convicted Rivas "despite the prosecution's failure to prove guilt beyond a reasonable doubt."

We find no reasonable likelihood the jury misunderstood or misapplied its instructions as Rivas proposes.  The argument is incompatible with the requirement that instructions be read as a whole, and not in "'artificial isolation'" (*Estelle*, *supra*, 502 U.S. at p. 72), as well as the presumption that the jury "understands and follows the court's instructions" (*Cortes*, *supra*, 75 Cal.App.5th at p. 205).  CALCRIM No. 220 specifies: "Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise."  Moreover, the jury was not only correctly instructed on the reasonable doubt standard by CALCRIM No. 220.  It also was instructed with CALCRIM Nos. 1191A and 1191B, regarding evidence of uncharged

and charged sex offenses, respectively, which both reemphasized that the beyond a reasonable doubt standard applies to "each charge."[2]

Rivas has not demonstrated any instructional error. We therefore need not consider whether any error was prejudicial.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
                                                                                                            J.

We concur:

CODRINGTON
                    Acting P. J.

FIELDS
                    J.

---

[2] CALCRIM No. 1191B, as given, states: "The People presented evidence that the defendant committed the crimes of Lewd Act on a Child Under Age 14 charged in Counts 1 through 11, and Possession of Child or Youth Pornography, as charged in count 12.[¶] *If the People have proved beyond a reasonable doubt that the defendant committed one or more of these crimes*, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit the other sex offenses charged in this case.[¶] If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of another crime. *The People must still prove each charge and allegation beyond a reasonable doubt.*" (Italics added.) CALCRIM No. 1191A, also specifies that "[t]he People must still prove each charge beyond a reasonable doubt," even if the jury finds the defendant committed the uncharged sex offenses.

8